RECEIVED
IN LAKE CHARLES, LA.

MAY 21 2012

TONY R. MOORE, CLERK
BY_____
                    DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, EX REL. DENT T. NUNNALLY | : | DOCKET NO. 2:08 CV 0371 |
| VS. | : | JUDGE MINALDI |
| WEST CALCASIEU CAMERON HOSPITAL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss (Rec. Doc. 29) filed by the defendant, West

Calcasieu Cameron Hospital ("WCCH"). WCCH seeks to dismiss the complaint pursuant to Federal

Rules of Civil Procedure 12(b)(6) and 9(b). The relator, Dent T. Nunnally ("Nunnally"or "relator")

filed an opposition (Rec. Doc. 41) and WCCH filed a reply (Rec. Doc. 42).

## RULE 12(b)(6)

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion

to dismiss for failure to state a claim and challenges the sufficiency of a plaintiff's allegations. Fed.

R. Civ. P. 12(b)(6). The court accepts all well-pleaded factual allegations as true, and interprets the

complaint in the light most favorable to the plaintiff. *United States ex rel. Willard v. Humana Health*

*Plan of Tex. Inc.,* 336 F.3d 375, 379 (5th Cir.2003). The plaintiff's factual allegations must support

a claim to relief that is plausible on its face and rises above mere speculation. *United States ex rel.*

*Marcy v. Rowan Cos.,* 520 F.3d 384, 388 (5th Cir.2008); *Bell Atl. Corp. v. Twombly,* 127 S. Ct.

1955, 1974 (2007). A plaintiff must provide "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.*

In addition, claims brought under the FCA must comply with the particularity requirements of Rule 9(b). *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997). Rule 9(b) requires, at a minimum, "that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Id.*; *see also United States ex rel. Rafizadeh v. Cont'l Common, Inc.,* 553 F.3d 869, 872-73 (5th Cir.2008).

## FACTS

On or about March 17, 2008, the relator filed a *qui tam* complaint pursuant to the FCA against WCCH.  The complaint primarily alleges that WCCH submitted false claims to the government by (1) billing for laboratory services at a higher price than that charged to certain referred patients not covered by Medicare, and (2) billing for laboratory services rendered to patients referred to WCCH by physicians allegedly in violation of the Ant-Kickback Statute ("AKS") and the FCA.

## ANALYSIS

WCCH asserts three grounds for dismissal:

1)   The relator has not pleaded facts indicating that WCCH induced or received any improper referrals of Medicare patients;

2)   The relator has failed to state a claim against WCCH under the FCA because he does not plead that any claim that WCCH made to the government was false and not in accordance with Medicare rules, regulations, or pricing schedules; and

3)   The relator's complaint does not comply with Fed. R. Civ. P. 9(b) in that it fails to allege with specificity the individual acts of wrongdoing by WCCH upon which its claims are based.

The FCA and AKS Claims

The False Claims Act prohibits, in relevant part, 1) the presentment of a false claim to the Government, 2) the use of a false record or statement to get a false claim paid, and 3) conspiracies

to get a false claim paid.[1]  Liability for violation includes a liquidated civil penalty and damages, which need not be shown to state a claim but which if shown will be doubled and may be trebled.[2]

To aid the rooting out of fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators, who serve as a "posse of *ad hoc* deputies to uncover and prosecute frauds against the government."[3]

The instant complaint does not invoke any specific subsection of §3729. §3729(a)(1) imposes liability upon any person who "knowingly presents, or causes to be presented" a false claim to the government.[4]  Elements of this claim require the 1) knowing 2) presentment of 3) a false or fraudulent

---

[1]  See 31 U.S.C. § 3729(a)(1-3):
Any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid ...

is liable to the United States Government ... [.]

[2]  *Id.* § 3729(a).

[3]  *United States ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.,* 961 F.2d 46, 49 (4th Cir.1992).

[4]  *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180 (5th Cir. 2009) citing 31 U.S.C. § 3729(a)(1).

claim. *Id.*[5]

§3729(a)(2) requires proof that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government. For this section, the recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute; [the court] need not make the step of inferring that the record actually caused a claim to be presented to the Government. *Grubbs, supra.* A successful § 3729(a)(2) claim requires proof that the defendant "intended that the false record or statement be material to the [g]overnment's decision to pay or approve the false claim."[6] The relator must show that defendants had knowledge of the alleged falsehoods in the documents at issue.[7]

To prove a conspiracy under § 3729(a)(3) of the False Claims Act, a relator must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the government] and (2) at least one act performed in furtherance of that agreement." *Grubbs, supra.* Rule 9(b)'s particularity requirements apply to § 3729(a)(3). An agreement may be inferred when it is a natural consequence of the factual allegations. *Id.*

By its own terms, the FCA imposes no liability unless the alleged violator "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the

---

[5] Liability under § 3729(a)(1) does not require actual or specific damages, because the statute contemplates liquidated penalties. *Id.*

[6] *U.S. ex rel. Rafizadeh v. Continental Common, Inc.,* 553 F.3d 869, 873-874 (5th Cir.2008) (citing *Allison Engine Co. v. United States ex rel. Sanders,* 553 U.S. 662, 128 S.Ct. 2123, 2126 (2008)).

[7] *U.S. ex rel. Farmer v. City of Houston,* 523 F.3d 333, 338 (5th Cir.2008); *U.S. ex rel. Stennett v. Premier Rehabilitation Hosp.,* 2011 WL 841273, *9 (W.D.La.,2011).

information; or (3) acts in reckless disregard of the truth or falsity of the information." [8] This means that "the evidence must demonstrate 'guilty knowledge of a purpose on the part of [the defendant] to cheat the government,' or 'knowledge or guilty intent.' " [9] Thus, the relator must raise a fact issue not only as to whether WCCH made false or fraudulent claims, but also as to whether it knowingly committed fraud. For the following reasons, we conclude that relator has failed to state a claim for relief that is plausible on its face.

WCCH argues that the complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) because Nunnally fails to plead a single specific false claim or a single specific referral in violation if the Anti-Kickback Statute ("AKS").

The AKS prohibits the solicitation or receipt of remuneration in return for referrals of patients covered by federal government programs and the payment of remuneration to induce such referrals. *See, e.g.,* 42 U.S.C. § 1320. In *United States ex rel. Thompson v. Columbia/HCA Healthcare*[10] the Fifth Circuit held that a relator may not maintain a FCA case based upon violations of the AKS unless the provider was required to file certification in connection with the claim, the filed certification was false, and the relator identifies specific claims and/or certifications that were fraudulent.[11]

The "false certification theory" of False Claims Act liability is predicated on false certification of compliance with a federal statute, regulation, or contractual term that is a prerequisite to obtaining

---

[8]  31 U.S.C. § 3729(b)(1)(A).

[9]  *Id.* at 231 (citations omitted). *United States ex rel. Taylor–Vick v. Smith,* 513 F.3d 228 (5th Cir.2008).

[10]  938 F.Supp. 399, 402 (S.D. Tex. 1996), *aff'd in part and rev'd in part,* 125 F. 3d 899 (5th Cir. 1997),

[11]  *Thompson,* 125 F.3d at 903.

a government benefit. The Fifth Circuit has identified the two elements necessary to state a false certification cause of action: (1) defendant makes a knowingly false certification of compliance with a statute or regulation; and (2) the certification is a prerequisite to payment.[12]  Under either implied or express certification theories, the certification must be a prerequisite to receive the government benefit in order to be legally false.[13]

Nunnally did not, in his complaint, allege that WCCH actually induced any improper referrals or submitted any false claims derived from an improper referral.  Nunnally alleges that the defendant "has periodically either certified in writing or impliedly certified to the Medicare Program that it complied with all of Medicare's program rules, regulations and laws applicable thereto." Compl. ¶12. The relator does not identify any specific Medicare patient referred to WCCH pursuant to any of the alleged exclusive laboratory agreements.  He does not identify with particularity any Medicare claim submitted by the defendants for services rendered pursuant to such a referral.

The relator alleges that the defendant

> "knew at all times relevant to this complaint that such agreement(s) violated the Medicare Anti Kickback Statute and the False Claims Act.  The agreement(s) resulted in overcharges to Medicare by Defendants which Medicare would not have paid had the United States government known about the illegal agreement(s) and in particular the lesser charge presented to the physician.  By concealing the agreement(s) from the Medicare program and not informing the Medicare program of the lesser charge to the physician while at the same time Defendant provided written and/or implied certification to the Medicare program that it was complying with all its rules and

---

[12] *United States v. Southland Management Corp.,* 288 F.3d 665, 679 (5th Cir.2002), *reh'g en banc granted,* 307 F.3d 352 (5th Cir.2002).

[13] *United States ex rel. Coppock v. Northrup Grumman Corp.,* 2003 WL 21730668, at *11 (N.D.Tex. July 22, 2003); *see United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 902 (5th Cir.1997) (claim under False Claims Act "legally false" only where party affirmatively certifies compliance with statute or regulation as condition to receiving governmental payment or property).

regulations...". Compl. P. 2

Nunnally does not allege with particularity an actual certification to the government that was a prerequisite to obtaining the government benefit. He fails to allege the first element that WCCH made a knowingly false certification of compliance with a statute or regulation. Neither does the relator allege that by participating in Medicare, that WCCH impliedly certified compliance. There is no allegation that WCCH expressly certified its compliance. Therefore, the complaint does not state a claim for which relief can be granted under the AKS.

Nunnally fails to allege any other specific Medicare regulations, guidelines, or pricing schedules that WCCH's claims violate and that amount to false claims. He also fails to plead any regulation that makes a Medicare claim false and in violation of the FCA merely because a provider may have undisclosed agreements with other providers to accept payment at a rate below that of the Medicare fee schedules.

Rule 9(b)

The parties devoted much discussion to the interplay between Rule 8(a), which calls for a short and plain statement of the claim, and Rule 9(b), which is an exception to Rule 8(a) because it requires enough facts [taken as true] to state a claim to relief that is plausible on its face.[14] Several circuits have considered particularity challenges to FCA complaints, focusing largely on the Act's presentment requirement.

The Fifth Circuit discussed the FCA pleading requirements in depth in *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009). In *Grubbs*, the court opined:

We have traditionally required that a fraud complaint include "the time, place and

---

[14] *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 570 (2007).

contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." However, we have acknowledged that " Rule 9(b)'s ultimate meaning is context-specific," and thus there is no single construction of Rule 9(b) that applies in all contexts. Depending on the claim, a plaintiff may sufficiently "state with particularity the circumstances constituting fraud or mistake" without including all the details of any single court-articulated standard-it depends on the elements of the claim at hand.

The False Claims Act, in contrast, lacks the elements of reliance and damages. Rather, it *protects* the Treasury from monetary injury. Put plainly, the statute is remedial and exposes even unsuccessful false claims to liability. A person that presented fraudulent claims that were never paid remains liable for the Act's civil penalty. It is adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the bill are less significant because a complaint need not allege that the Government relied on or was damaged by the false claim. Thus, a claim under the False Claims Act and a claim under common law or securities fraud are not on the same plane in meeting the requirement of "stat[ing] with particularity" the contents of the fraudulent misrepresentation. (Internal citations omitted). *Id.* At 188.

The Fifth Circuit went on to conclude that, the time, place, contents, and identity standard is not a straightjacket for Rule 9(b).  Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the FCA.  The court held that "to plead with particularity the circumstances constituting fraud for a FCA § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging the particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190.

The holding in *Grubbs* does not absolve the relator of having to plead any specific facts of a false claim. These specific facts, as noted above, must be paired with  reliable indicia that lead to a strong inference that claims were actually submitted.  In the case at bar, the complaint is deficient under the *Grubbs* standard because the relator does not identify any specific physicians, patients, services or claims involved in the alleged scheme.  The relator simply alleges that WCCH entered into

verbal agreements with various physicians whereby WCCH would receive the totality of the physicians' referrals in return for discounted laboratory rates for the physicians' non Medicare patients. Compl. ¶ 9. Even after *Grubbs,* sufficient details must be pleaded to support each element of the relator's claim.[15]  Thus, an allegation that some unidentified physicians participated in this scheme over a twenty year period of time, without more, is insufficient to state a claim.

Conclusion

Nunnally's complaint fails to state a claim upon which relief can be granted. Accordingly, WCCH's motion to dismiss will be granted.

Lake Charles, Louisiana, this 2\ day of  May, 2012.

PATRICIA MINALDI<br>
UNITED STATES DISTRICT JUDGE

---

[15] *See, e.g., United States  ex rel. Stennett v. Premier Rehabilitation Hosp.,* No. 08-0782, 2011 WL 841273 at *10-*12 (W.D.La. Jan 21, 2011)(finding that the  relator's pleading was "fatally sparse" where the relator failed to plead sufficient facts to support the plausibility of the scienter element); *United States ex rel. Bennett v. Medtronic, Inc.,*747 F. Supp. 2d 745, 767-69 (S.D. Tex. 2010) (dismissing the relator's complaint and holding that under any pleading standards the relators must state a factual basis for their beliefs, and that allegations that some physicians engaged in the scheme was not sufficient to meet this standard).